IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KADEER KHANDAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1697 (PLF) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| SALIM MOHAMMED ADAM BIN ) | |
| AMIR, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1724 (RMU) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |
| ) | |
| ABRAHIM OTHMAN ABRAHIM ) | |
| EDRIES, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-CV-1725 (RWR) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, ) | |
| *et al.,* ) | |
| ) | |
| Respondents. ) | |



)
MUHAMMED QASIM, *et al.*,                                )
)
     Petitioners,                                )
)
  v.                                )    Civil Action No. 05-CV-1779 (JDB)
)
GEORGE W. BUSH,                                )
    President of the United States,                                )
    *et al.,*                                )
)
     Respondents.                                )
)
ABU ABDUL AZIZ, *et al.*,                                )
)
     Petitioners,                                )
)
  v.                                )    Civil Action No. 05-CV-1864 (HHK)
)
GEORGE W. BUSH,                                )
    President of the United States,                                )
    *et al.,*                                )
)
     Respondents.                                )
)

### RESPONDENTS' MOTION FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING RELATED APPEALS

Respondents hereby respectfully request that the Court order petitioners to show cause why the above-captioned petitions for writ of habeas corpus, not directly authorized by the detainees at Guantanamo Bay for whom habeas relief is sought, but instead brought by other detainees claiming to act as their "next friends," should not be dismissed for lack of proper next friend standing. The putative "next friends," detainees Bisher Al-Rawi, Isa Ali Al-Murbati and

one unnamed detainee,[1] bear the burden of establishing their next friend status and justifying the

exercise of the court's jurisdiction over these actions. See Whitmore v. Arkansas, 495 U.S. 149,

163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to

pursue an action on behalf of another."). To do so, they must satisfy the "two firmly rooted

prerequisites" articulated by the Supreme Court in Whitmore: (1) they must demonstrate that the

detainees on whose behalf they claim to file petitions for writ of habeas corpus cannot challenge

the legality of their detention themselves; and (2) they must have a significant relationship with

each of these detainees in order to demonstrate that they are truly dedicated to each detainee's

best interests. Id. at 163-64. The petitions in the above-captioned cases fail to meet either

requirement. If petitioners are unable to demonstrate that the petitions were filed by legitimate

---

[1] Although the petition in Khandan v. Bush, No. 05-CV-1697 (PLF), was styled as a petition filed pursuant to direct authorization by the detainee for whom habeas relief is being sought in that case, see Khandan Petition at 1, the exhibit attached to the petition suggests that another individual, most likely another detainee at Guantanamo Bay, wrote this "authorization," purportedly on petitioner Khandan's behalf. The handwritten documentation is entitled "Authorization for *one of the detainees*" (emphasis added), and lists petitioner's spoken languages as "Pashtu, Farsi (I am not sure of Farsi, but sure of Pashtu)," both of which signal that someone other than petitioner Khandan wrote the "authorization." See Petition Exhibit at 2. The exhibit also includes an unsigned copy of a typed "Acknowledgment of Representation" that has been submitted in other Guantanamo detainee habeas cases, see Petition Exhibit at 3-4, and each page of the exhibit is stamped either "FOUO" or "UNCLASSIFIED," most likely by the Privilege Team, who performs classification reviews of legal mail and documentation generated during detainees' meetings with their counsel, pursuant to the Protective Order. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), Ex. A (attached hereto as Exhibit B). All of these indicators suggest that this "authorization" was written by a detainee other than petitioner Khandan, and then submitted by that detainee to his own counsel. Thus, the petition in this case should have been styled as one filed through a putative next friend, the unnamed detainee who wrote the "authorization" purportedly on petitioner Khandan's behalf.

next friends, the Court cannot exercise jurisdiction over the petitions, and they must be dismissed for lack of standing.[2]

If the above-captioned cases are not dismissed for lack of proper next friend standing, the cases nonetheless should be stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). The pending appeals will address the core issues in these cases and, thus, determine how these cases should proceed, if at all. It makes no sense for these cases to proceed in any substantive fashion prior to resolution of the appeals; further proceedings would require the expenditure of significant judicial and other resources that may be avoided as a result of the appeals, and, in any event, such proceedings very likely would have to be revisited or relitigated once the appeals are decided and the Court of

---

[2] The issue of next friend standing was raised sua sponte by Judge Roberts in Ahmed v. Bush, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case. Based on an observation that the petition presented scant facts demonstrating that the Whitmore requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12). Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the Whitmore test were satisfied. See Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 13). Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, see Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in these recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

Appeals provides guidance regarding handling of the claims in all of the Guantanamo detainee cases.

## ARGUMENT

**I.    Petitioners Should Establish Proper "Next Friend" Standing or the Above-Captioned Cases Should be Dismissed.**

It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue" under Article III of the Constitution. Whitmore, 495 U.S. at 154. The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves." Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal quotations omitted).[3] "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." Warth v. Seldin, 422 U.S. 490, 498 (1975). A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. If a petition is brought by someone acting on behalf of the person for whose

---

[3] The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him. That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004). See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636. Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next-friend standing in the defective case brought by the public defender and private citizen.

relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest." Whitmore, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however. See id. Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

Id. at 163-64 (internal citations omitted).

The petitions in the above-captioned cases do not meet either prong of the Whitmore test. First, petitioners have failed to demonstrate that the detainees for whom habeas relief is sought cannot submit petitions on their own behalf. As explained in the Declaration of Frank Sweigart, the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus, and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.[4] See

---

[4] Detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by DoD and through the International Committee for the Red Cross. Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be revoked. See Sweigart Declaration, Ex. D.

(Second) Sweigart Declaration, ¶¶ 3-5 (attached hereto as Exhibit A).  As a result of these

notifications, 55 pro se petitions for writ of habeas corpus have already been filed with the

Court,[5] and at least 17 detainees have written directly to counsel and secured assistance in filing

petitions.[6]  Furthermore, DoD has taken affirmative steps to facilitate legal representation for

---

[5]  See Khiali-Gul v. Bush, No. 05-CV-0877 (JR); Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW); Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush, No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK); Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v. Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No. 05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997 (PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH); Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No. 05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013 (JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS); Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush, No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL); Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v. Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush, No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491 (JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v. Bush, No. 05-CV-1555 (JR).

[6]  See Al Qosi v. Bush, No. 04-CV-1937 (PLF); Abdullah v. Bush, No. 05-CV-0023 (RWR) (Rami Bin Saad Al-Oteibi); Al-Wazan v. Bush, No. 05-CV-329 (PLF); Alhami v. Bush, No. 05-CV-359 (GK); Ameziane v. Bush, No. 05-CV-392 (ESH); Qassim v. Bush, No. 05-CV-497 (JR); Tumani v. Bush, No. 05-CV-0526 (RMU); Mokit v. Bush, No. 05-CV-0621 (PLF); Battayav v. Bush, No. 05-CV-0714 (RBW); Hamoodah v. Bush, No. 05-CV-0795 (RJL); Mousovi v. Bush, No. 05-CV-1124 (RMC) (Abdul Razak Iktiar Mohammed); Faraj v. Bush, No. 05-CV-1590 (JDB) (case voluntarily dismissed because of earlier-filed pro se case submitted by petitioner); Zahir v. Bush, No. 05-CV-1623 (CKK); El-Marqodi v. Bush, No. 05-CV-1649 (PLF).

detainees who have indicated a desire to challenge the legality of their detention by providing

them with a form to complete and mail to the American Bar Association ("ABA"), which has

agreed to recruit volunteer counsel for detainees desiring representation.  See (Second) Sweigart

Declaration, ¶ 7.  In addition, all detainees at Guantanamo Bay have the ability to send and

receive mail, allowing them to contact family and friends, see Sweigart Declaration, Ex. D;

supra, note 4, and they have been informed of the option of contacting friends and family to have

them file habeas petitions on their behalf.

       Given that all detainees have been notified of their right to submit petitions for writ of

habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the

Court; and that the ABA has agreed to offer the detainees assistance in securing legal

representation, it cannot simply be assumed that the detainees seeking habeas relief in the above-

captioned cases cannot file petitions on their own behalf.  The next friend petitions, however, do

just that.  See, e.g., Bin Amir Petition, ¶ 4 ("Because Petitioner Bin Amir has been denied access

to legal counsel and to the courts of the United States, Mr. Al-Rawi is acting as Petitioner Bin

Amir's Next Friend . . ."); Qasim Petition, ¶ 4 ("Because his/her fellow detainee has been denied

access to legal counsel and to the courts of the United States, Isa Ali Al-Murbati acts as his Next

Friend.").  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt.

no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been

denied access to the courts of the United States. . . . In light of the fact that several pro se

petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this

court cannot be presumed, but must be established.").  Absent evidence that the detainees on

whose behalf these cases are filed cannot submit petitions on their own behalf, petitioners cannot

- 8 -

demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the

petitions in the above-captioned cases.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231

(1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from

averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations

omitted).

    The purported "next friends" in the above-captioned cases have also failed to satisfy the

second requirement of the Whitmore test — they have not established that they have a

"significant relationship" with each detainee such that they are "truly dedicated to the[ir] best

interests."  See Whitmore, 495 U.S. at 163-64.[7]  The requirement of a "significant relationship"

---

    [7] The majority of Circuits that have been confronted with the issue have construed
Whitmore to require a "significant relationship" as part of the second prong of the test for next
friend standing.  See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus
most faithfully understood as requiring a would-be next friend to have a significant relationship
with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d
1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however,
with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court
addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court
suggested in the Whitmore case, that not just anyone who expresses an interest in the subject
matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant
relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995)
(under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant
relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir.
1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some
significant relationship with the real party in interest'").  See also Al Odah v. Bush, 321 F.3d
1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating
that the family members of Guantanamo detainees who filed habeas petitions on their behalf
"demonstrated through affidavits that they are 'truly dedicated to the best interests of these
individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing
Whitmore, 495 U.S. at 163-64).  Although the Eleventh Circuit questioned whether Whitmore
established "some significant relationship" as an independent requirement, it nevertheless noted
the importance of a relationship in demonstrating whether a putative next friend "can show true
dedication to the best interests of the person on whose behalf he seeks to litigate."  Sanchez-
Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002).  See
also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is

with the real party in interest is necessary to ensure that a next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not (1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's desires and interests.  See id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses.  See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife).  Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship.  See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent.").  Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction.  See, e.g., Hamdi, 294 F.3d at

---

not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and she does not have 'some significant relationship with the party in interest.'") (citing Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned cases, petitioners have not demonstrated that Bisher Al-Rawi, Isa Ali Al-Murbati and the unnamed detainee have any sort of "significant relationship" with the detainees on whose behalf they claim to seek habeas relief. The declarations submitted with the Bin Amir and Edries petitions merely refer to a January 4, 2005 letter from Bisher Al-Rawi stating that he was "advised" by petitioners Bin Amir and Edries that they desire to pursue habeas relief, without indicating that he knows petitioners in any significant way. See Declaration of George Brent Mickum IV, ¶ 5 (attached to Bin Amir and Edries petitions). The statement by Isa Ali Al-Murbati submitted with the Aziz petition (which may also purport to be "authorization" for the Qasim petition, although it was not filed in the Qasim case), states only that Mr. Al-Murbati "make[s] this authorization as next friend to [petitioners]" without providing any personal information about them. See Aziz Petition, Ex. A. Further, the unnamed detainee who submitted an "authorization" on behalf of petitioner Khandan is not even certain of what languages petitioner Khandan speaks. See Khandan Petition Exhibit at 2 ("Pashtu, Farsi (I am not sure of Farsi, but sure of Pashtu)"). This dearth of basic biographical and personal information about the detainees on whose behalf habeas relief is sought indicates that the purported next friends do not share any meaningful relationship with these detainees and, therefore, cannot be determined to be acting in their best interests.[8] See Ahmed v. Bush, No. 05-

---

[8] If a detainee were able to act as next friend for another detainee simply based on the mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to bring mass habeas corpus petitions simply by being able to list the identities of those detained alongside them, a situation that is surely inconsistent with standing jurisprudence.

- 11 -

CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition does not provide basic personal facts about Ahmed, such as his citizenship, his age, whether he is married or has a family, the place of his arrest or capture, and the places of detention, if any, prior to his being transported to Guantanamo Bay.  The absence of such facts leaves the impression that Hassen does not know even this much about Ahmed and his situation.").  Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal information presented in the petitions indicates that the purported next friends merely know of another detainee or, at best, are mere acquaintances with the detainees on whose behalf they seek habeas relief, the individuals have failed to demonstrate that they are "truly dedicated to the [detainees'] best interests."  Whitmore, 495 U.S. at 163.  Absent proof that evidences a significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petitions in the above-captioned cases.[9]

       In addition to the jurisdictional defect arising out of the lack of a significant relationship between the purported next friend and the party in interest, the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom habeas relief is sought. Given the similar names or aliases of many of the approximately 500 individuals detained at Guantanamo Bay, it is often difficult, if not impossible, to correctly identify detainees based on

_____

       [9]  Over 135 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

the minimal information provided in the petitions.  Respondents are often left trying to guess at a detainee's identity.  Although identification of petitioners does not appear to be an issue in some of the above-captioned cases, respondents have yet to identify about two dozen purported petitioners as individuals presently detained at Guantanamo Bay, despite having requested additional information from these petitioners' counsel.  Moreover, there have already been two instances in which respondents incorrectly identified petitioners in the Guantanamo Bay detainee cases; errors which, unfortunately, were not discovered until counsel visited and interviewed these detainees at Guantanamo Bay.  Requiring petitions to be filed either through direct authorization by the detainees on whose behalf habeas relief is sought, or through individuals who can demonstrate a significant relationship with the detainees, would diminish the identification issues that have plagued the parties in the Guantanamo detainee litigation thus far.[10]

In sum, the petitions in the above-captioned cases fail to satisfy the standing requirements articulated by the Supreme Court in <u>Whitmore</u>.  If petitioners are unable to demonstrate that the petitions were filed by legitimate next friends, the Court cannot exercise jurisdiction over the petitions, and they must be dismissed for lack of standing.

---

[10] In addition, the phenomenon of detainees purporting to act as next friends results in counsel improperly abusing the next friend device in order merely to solicit the Guantanamo detainee population for clients, while in the meantime seeking various forms of relief with respect to anyone a purported next friend detainee, such as Mr. Al-Rawi, can remember having come in contact with.

II.     **If the Court Does Not Dismiss the Above-Captioned Cases, They Should be Stayed Pending Resolution of the Appeals of Decisions in the Other Guantanamo Detainee Cases Adjudicating Common Issues.**

If the Court finds that the petitions in the above-captioned cases were filed by legitimate next friends,[11] the Court should stay proceedings in these cases pending the resolution of the appeals in Khalid, Boumediene and In re Guantanamo Detainee Cases, which will determine whether and how these cases should proceed.

On January 19, 2005, Judge Leon granted respondents' motion to dismiss or for judgment in its entirety, concluding that constitutional protections do not extend to aliens outside sovereign United States territory, such as petitioners, and that petitioners also have no viable claims under U.S. statutory law or international law or treaties.  See Khalid v. Bush, No. 04-CV-1142 (RJL), Boumediene v. Bush, No. 04-CV-1166 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005).  The Khalid and Boumediene cases are currently on appeal to the D.C. Circuit.  See Nos. 05-5062, 05-5063 (D.C. Cir.).

---

[11]  Even if the Court finds that petitioners have established next friend standing so that the Court can exercise jurisdiction over the petitions, the next friends should not be permitted to serve in this capacity beyond the time when counsel are permitted to meet with the detainees for whom habeas relief is sought.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004), § III.C. (attached hereto as Exhibit B) (permitting counsel two visits with a detainee before an authorization of representation by the detainee must be provided to respondents).  At that time, counsel should determine these detainees' wishes concerning pursuing a challenge to their detention through the habeas petitions in these cases, such that the cases can then either be converted into direct petitions or be dismissed.

On January 31, 2005, Judge Green entered an order (and memorandum opinion) in eleven other of the pending Guantanamo Bay detainee cases[12] denying in part and granting in part respondents' motion to dismiss or for judgment as a matter of law. See Memorandum Opinion Denying in Part and Granting in Part Respondents' Motion to Dismiss or for Judgment as a Matter of Law in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005). Contrary to the prior decision of Judge Leon, Judge Green, inter alia, determined that procedural "due process" protections apply to aliens detained at Guantanamo Bay and that the Combatant Status Review Tribunal proceedings the military has used to confirm detainees' status as enemy combatants do not satisfy these due process requirements. Id. at 453-78. Further, in her decision, Judge Green agreed with the decision of Judge Robertson in Hamdan v. Rumsfeld, 344 F. Supp. 2d 152, 165 (D.D.C. 2004), rev'd, 415 F.3d 33 (D.C. Cir. 2005), and concluded that the Third Geneva Convention is "self-executing" and can provide petitioners with a claim in a habeas action.[13] 355 F. Supp. 2d at 478-80. Judge Green, however, dismissed petitioners' remaining constitutional, statutory, international law, and treaty claims. Id. at 480-81.

Judge Green noted that her January 31, 2005 decision on respondents' motion to dismiss or for judgment "technically applie[d] only to the eleven cases contained in the [opinion's]

---

[12] Hicks v. Bush, No. 02-CV-0299 (CKK); Al Odah v. United States, No. 02-CV-0828 (CKK); Habib v. Bush, No. 02-CV-1130 (CKK); Kurnaz v. Bush, No. 04-CV-1135 (ESH); O.K.v. Bush, No. 04-CV-1136 (JDB); Begg v. Bush, No. 04-CV-1137 (RMC); El-Banna v. Bush, No. 04-CV-1144 (RWR); Gherebi v. Bush, No. 04-CV-1164 (RBW); Anam v. Bush, No. 04-CV-1194 (HHK); Almurbati v. Bush, No. 04-CV-1227 (RBW); and Abdah v. Bush, No. 04-CV-1254 (HHK).

[13] The D.C. Circuit held in Hamdan that the Third Geneva Convention does not give rise to claims enforceable in court. See Hamdan, 415 F.3d at 40.

caption," but the Court nevertheless acknowledged that the opinion "addresse[d] issues common" to eight other Guantanamo Bay detainee cases that had been filed during or after the briefing and oral argument that resulted in the Court's opinion.[14] See id. at 452 & n.15.

On February 3, 2005, respondents filed a motion seeking certification of the January 31, 2005 order for interlocutory appeal and filed a motion to stay all the Guantanamo Bay detainee cases pending at that time, consistent with the need for these cases to proceed in a coordinated fashion. Thus, the motion was filed as a motion for certification of order for interlocutory appeal and for a stay in the eleven cases in which the January 31, 2005 order was entered, and was filed by respondents solely as a motion to stay in the other then-pending cases. Judge Green certified her January 31, 2005 decision on respondents' motion to dismiss or for judgment for appeal and stayed proceedings in the eleven cases in which the January 31, 2005 order was entered, "for all purposes pending resolution of all appeals." Judge Green left the decision whether to stay cases other than the eleven to the individual judges in those cases. See Order Granting in Part and Denying in Part Respondents' Motion for Certification of Jan. 31, 2005 Orders and for Stay in In re Guantanamo Detainee Cases (Feb. 3, 2005) (Green, J.).

Various petitioners in the eleven cases sought reconsideration of Judge Green's stay order, arguing that the Court should permit factual development and proceedings regarding detainee living conditions to go forward. See, e.g., Petrs' Motion for Reconsideration of Order

---

[14] Belmar v. Bush, No. 04-CV-1897 (RMC); Al-Qosi v. Bush, No. 04-CV-1937 (PLF); Paracha v. Bush, No. 04-CV-2022 (PLF); Al-Marri v. Bush, No. 04-CV-2035 (GK); Zemiri v. Bush, No. 04-CV-2046 (CKK); Deghayes v. Bush, No. 04-CV-2215 (RMC); Mustapha v. Bush, No. 05-CV-22 (JR); Abdullah v. Bush, No. 05-CV-23 (RWR).

Granting Stay Pending Appeal at 9-10 (dkt. no. 203 in <u>Al Odah</u>, No. 02-CV-0828 (CKK)).  Judge

Green, however, denied the motion for reconsideration

> in light of the substantial resources that would be expended and the
> significant burdens that would be incurred should this litigation go
> forward, and . . . [in] recognition that a reversal of the Court's
> January 31, 2005 rulings would avoid the expenditure of such
> resources and incurrence of such burdens . . . .

<u>See</u> Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in <u>In re</u>

<u>Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u>, 355 F. Supp. 2d 482 (D.D.C. 2005)

(Green, J.).

  On February 9, 2005, pursuant to Judge Green's certification, respondents filed a petition

for interlocutory appeal of the January 31, 2005 decision with the D.C. Circuit, <u>see</u> 28 U.S.C.

§ 1292(b), and requested that the appeal proceed on an expedited basis.  Further, petitioners in

the eleven cases subject to Judge Green's decision filed a cross-petition for interlocutory appeal

with the D.C. Circuit and petitioners in <u>Al-Odah</u> appealed Judge Green's stay order.  On March

10, 2005, the D.C. Circuit accepted the interlocutory appeal.  In addition, as noted above,

petitioners in <u>Khalid</u> and <u>Boumediene</u> appealed Judge Leon's decision.  Oral argument in both

appeals was held on September 8, 2005.

  In light of these pending appeals, several of the cases pending at the time of Judge

Green's decision, but that Judge Green did not stay, have been stayed pending appeal.  <u>See</u>

<u>Paracha</u>, No. 04-CV-2022 (PLF) (dkt. no. 49); <u>Al Marri</u>, No. 04-CV-2035 (GK) (dkt. no. 26);

<u>Zemiri</u>, No. 04-CV-2046 (CKK) (dkt. no. 32); <u>Deghayes</u>, No. 04-CV-2215 (RMC) (dkt. no. 7);

<u>Mustapha</u>, No. 05-CV-22 (JR) (dkt no. 7); <u>Abdullah</u>, No. 05-CV-23 (RWR) (dkt. no. 16).  As

Judge Kessler stated in her stay order in <u>Al Marri</u>,

>The opinions resolving Judge Leon's and Judge Green's cases
>encompass and discuss many of the precise issues raised in
>Respondents' Motion [to Stay]. Thus, until the Court of Appeals
>addresses these issues, the law in this Circuit is unsettled, since
>Judge Green and Judge Leon reached different conclusions about
>many of the issues before them. Requiring this case to proceed
>before appellate resolution of those cases therefore would involve
>an unnecessary expenditure of judicial resources.

Order dated March 8, 2005 in Al-Marri, No. 04-CV-2035 (GK), at 2.

Since February 3, 2005 – the date respondents moved to stay all of the Guantanamo Bay detainee cases pending at that time – over 125 new petitions, involving approximately 200 petitioners, have been filed. Respondents have filed motions to stay proceedings in these new cases for the reasons stated herein, and several Judges of this Court have stayed proceedings in the cases pending before them.[15]

_____

[15]  See Al Mohammed v. Bush, No. 05-CV-0247 (HHK) (dkt. no. 18); El-Mashad v. Bush, No. 05-CV-0270 (JR) (dkt. no. 29); Al-Adahi v. Bush, No. 05-CV-0280 (GK) (dkt. no. 35); Al Joudi v. Bush, No. 05-CV-0301 (GK) (dkt. no. 26); Al-Wazan v. Bush, No. 05-CV-0329 (PLF) (dkt. no. 15); Al-Anazi v. Bush, No. 05-CV-0345 (JDB) (dkt. no. 21); Alhami v. Bush, No. 05-CV-0359 (GK) (dkt. no. 20); Ameziane v. Bush, No. 05-CV-0392 (ESH) (dkt. no. 12); Sliti v. Bush, No. 05-CV-0429 (RJL) (dkt. no. 8); M.C. v. Bush, No. 05-CV-0430 (ESH) (dkt. no. 10); Kabir v. Bush, No. 05-CV-0431 (RJL) (dkt. no. 10); Qayed v. Bush, No. 05-CV-0454 (RMU) (dkt. no. 4); Al-Shihry v. Bush, No. 05-CV-0490 (PLF) (dkt. no. 14); Aziz v. Bush, No. 05-CV-492 (JR) (dkt. no. 16); Qassim v. Bush, No. 05-CV-0497 (JR) (dkt. no. 14); Al-Oshan v. Bush, No. 05-CV-0520 (RMU) (dkt. no. 12); Tumani v. Bush, No. 05-CV-0526 (RMU) (dkt. no. 5); Al-Oshan v. Bush, No. 05-CV-0533 (RJL) (dkt. no. 6); Al Shamri v. Bush, No. 05-CV-0551 (RWR) (dkt. no. 10); Salahi v. Bush, No. 05-CV-0569 (JR) (dkt. no. 8); Mammar v. Bush, No. 05-CV-0573 (RJL) (dkt. no. 5); Al-Sharekh v. Bush, No. 05-CV-0583 (RJL) (dkt. no. 9); Magram v. Bush, No. 05-CV-0584 (CKK) (dkt. no. 9); Al Rashaidan v. Bush, No. 05-CV-0586 (RWR) (dkt. no. 10); Mokit v. Bush, No. 05-CV-0621 (PLF) (dkt. no. 13); Al Daini v. Bush, No. 05-CV-0634 (RWR) (dkt. no. 10); Ahmed v. Bush, No. 05-CV-0665 (RWR) (dkt. no. 16); Battayav v. Bush, No. 05-CV-0714 (RBW) (dkt. no. 12); Adem v. Bush, No. 05-CV-0723 (RWR) (dkt. no. 13); Hamlily v. Bush, No. 05-CV-0763 (JDB) (dkt. no. 10); Imran v. Bush, No. 05-CV-0764 (CKK) (dkt. no. 6); Al Hamamy v. Bush, No. 05-CV-0766 (RJL) (dkt. no. 6); Hamoodah v. Bush, No. 05-CV-0795 (RJL) (dkt. no. 13); Rahmattullah v. Bush, No. 05-CV-0878 (CKK) (dkt. no. 3); Nasrat v. Bush, No. 05-CV-0880 (ESH) (dkt. no. 4); Slahi v. Bush, No. 05-CV-0881 (RWR) (dkt. no. 5); Chaman v. Bush, No. 05-CV-0887 (RWR) (dkt. no. 7); Gul v.

If the Court finds that the above-captioned cases have been filed by legitimate next

friends, the cases should nevertheless be stayed pending the appeals of the other Guantanamo

Bay detainee cases.[16]  The petitions in these cases raise legal issues that were squarely addressed

---

Bush, No. 05-CV-0888 (CKK) (dkt. no. 3); Basardh v. Bush, No. 05-CV-0889 (ESH) (dkt. no. 4); Shaaban v. Bush, No. 05-CV-0892 (CKK) (dkt. no. 3); Sohail v. Bush, No. 05-CV-0993 (RMU) (dkt. no. 3); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB) (dkt. no. 4); Al Karim v. Bush, No. 05-CV-0998 (RMU) (dkt. no. 3); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW) (dkt. no. 3); Kahn v. Bush, No. 05-CV-1001 (ESH) (dkt. no. 3); Mangut v. Bush, No. 05-CV-1008 (JDB) (dkt. no. 2); Hamad v. Bush, No. 05-CV-1009 (JDB) (dkt. no. 4); Khan v. Bush, No. 05-CV-1010 (RJL) (dkt. no. 3); Ali Shah v. Bush, No. 05-CV-1012 (ESH) (dkt. no. 3); Salaam v. Bush, No. 05-CV-1013 (JDB) (dkt. no. 2); Al-Hela v. Bush, No. 05-CV-1048 (RMU) (dkt. no. 12); Zalita v. Bush, No. 05-CV-1220 (RMU) (dkt. no. 3); Aminullah v. Bush, No. 05-CV-1237 (ESH) (dkt. no. 3); Ghalib v. Bush, No. 05-CV-1238 (CKK) (dkt. no. 3); Pirzai v. Bush, No. 05-CV-1242 (RCL) (dkt. no. 4); Peerzai v. Bush, No. 05-CV-1243 (RCL) (dkt. no. 4); Alsawam v. Bush, No. 05-CV-1244 (CKK) (dkt. no. 3); Ullah v. Bush, No. 05-CV-1311 (RCL) (dkt. no. 5); Mohammed v. Bush, No. 05-CV-1347 (GK) (dkt. no. 7); Saib v. Bush, No. 05-CV-1353 (RMC) (Minute Order dated August 1, 2005); Hatim v. Bush, No. 05-CV-1429 (RMU) (dkt. no. 16); Al-Subaiy v. Bush, No. 05-CV-1453 (RMU) (dkt. no. 14); Dhiab v. Bush, No. 05-CV-1457 (GK) (Minute Order dated August 29, 2005); Faizullah v. Bush, No. 05-CV-1489 (RMU) (dkt. no. 3); Ahmad v. Bush, No. 05-CV-1492 (RCL) (dkt. no. 3); Amon v. Bush, No. 05-CV-1493 (RBW) (dkt. no. 3); Kiyemba v. Bush, No. 05-CV-1509 (RMU) (dkt. no. 8); Attash v. Bush, No. 05-CV-1592 (RCL) (dkt. no. 12).

[16]  The Court has the authority to stay proceedings in habeas cases, even prior to the filing of a response.  Pursuant to the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules"), which are applicable to petitions for writ of habeas corpus other than those arising under 28 U.S.C. § 2254, such as the petitions in these cases, see 2254 Rule 1(b), a court may extend the deadline for responses to habeas petitions beyond the time limits set forth in 28 U.S.C. § 2243 — the 2254 Rules do not indicate a fixed deadline for responding to habeas petitions, and they supersede the time limits set forth in 28 U.S.C. § 2243.  Rule 4 provides that "the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order. . . ."  See also Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994) ("[T]he Rules Governing Section 2254 Cases in the United States District Courts, which have the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the deadline for responses.  Rule 4 leaves it up to the district court to fix the deadline."); Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) (denying § 2241 petitioner's request for expedited consideration because "[t]he discretion afforded by Rule 4 of the 2254 Rules 'prevails' over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) (denying § 2241 petitioner's motion for correction of court scheduling order because "in the conflict between Rule 4 of the 2254 Rules and 28 U.S.C. § 2243, Rule 4 must

by the opinions in In re Guantanamo Detainee Cases, Khalid, and Boumediene and that are raised

in the appeals, including: (1) whether the petitioners have stated valid claims under the Fifth

Amendment to the United States Constitution and, if so, whether the procedures implemented by

respondents to determine the status of petitioners violate their Fifth Amendment rights; (2)

whether the petitioners have stated valid claims under the Third Geneva Convention;[17] and (3)

whether the petitioners have stated valid claims based on various other legal theories, including

other Constitutional provisions, other international treaties, Military regulations, the

Administrative Procedure Act, the Alien Tort Statute, and customary international law.  It makes

no sense for proceedings related to the merits of these cases, such as the submission of factual

returns in response to orders to show cause regarding the issuance of a writ of habeas corpus, to

go forward when decisions from the D.C. Circuit on the related Guantanamo detainee appeals,

which are proceeding in an expedited fashion, will determine the legal analyses applicable to

these cases and, indeed, whether and how these cases should proceed.  Thus, if the petitions are

not dismissed for lack of proper next friend standing, the Court should hold all proceedings in

---

prevail").  Furthermore, the 2254 Rules have provided courts with the discretion to consider the
burdens involved in filing responses to habeas petitions when implementing case management
schedules.  See Advisory Committee Notes to 2254 Rules; see also Lonchar v. Thomas, 517 U.S.
314, 325 (1996) (stating that the 2254 Rules confer "ample discretionary authority" on district
courts "to tailor the proceedings" in habeas cases).  See also Landis v. North American Co., 299
U.S. 248, 254-55 (1936) ("The power to stay proceedings is incidental to the power inherent in
every court to control the disposition of the causes on its docket with economy of time and effort
for itself, for counsel, and for litigants."); id. at 256 (noting propriety of stay in cases "of
extraordinary public moment").

[17] See note 13, supra.

this case in abeyance pending the outcome of the appeals of decisions by Judges of this Court in

the other Guantanamo Bay detainee cases.[18]

## **CONCLUSION**

For the reasons stated, the Court should order petitioners to show cause why these cases

should not be dismissed for lack of proper next friend standing.  If petitioners are able to

establish proper standing, the Court should stay further proceedings in these cases, except as

noted above, pending resolution of the appeals of Judge Leon's decision in Khalid and

Boumediene and Judge Green's January 31, 2005 decision in In re Guantanamo Detainee Cases.


Dated: September 23, 2005                    Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             KENNETH L. WAINSTEIN
                                             United States Attorney

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

---

[18]  In seeking a stay to the extent the next friend petitioners are determined to satisfy the applicable requirements, however, respondents do not intend thereby to block counsel access to properly represented petitioners.  To that end, if proper next friend standing is found, respondents would not object to entry of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access.  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 8, 2004) (attached as Exhibit B); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004) (attached as Exhibit C); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004) (attached as Exhibit D).  Respondents' lack of objection to entry of these orders in a properly filed case, however, is without prejudice to their right to challenge any particular terms of these orders in any future proceedings as appropriate.

_/s/ Preeya M. Noronha_
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents