IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABRAHIM OTHMAN ABRAHIM EDRIES,<br><br>BISHER AL-RAWI,<br><br>*Petitioners,*<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>*Respondents.* | Civil Action No. 1:05CV01725 (JR) |

**PETITIONERS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR THE IMMEDIATE ISSUANCE OF A WRIT OF *HABEAS CORPUS*, OR ALTERNATIVELY FOR AN ORDER TO SHOW CAUSE**

This memorandum of law is respectfully submitted on behalf of Petitioners Abrahim Othman Abrahim Edries ("Petitioner Edries") and Petitioner Bisher Al-Rawi as Next Friend of Petitioner Edries ("Petitioner Al-Rawi") in further support of Petitioners' Motion For The Immediate Issuance Of A Writ Of *Habeas Corpus* Pursuant To 28 U.S.C. § 2243 Or, Alternatively, For An Order To Show Cause.[1]  The Court, in addition to the relief requested in the Petitioners' motion, should also consolidate this action with an

---

[1] This memorandum of law is also respectfully submitted in opposition to Respondents' Motion For Order To Show Cause Why Case Should Not Be Dismissed For Lack Of Proper "Next Friend" Standing Or, In The Alternative, To Stay Proceedings Pending Related Appeals ["Respondents' Mot. For Order To Show Cause"].

earlier-filed *pro se* action filed by Petitioner Edries, docket number 05-CV-01555 (JR) (August 2, 2005), attached as Exhibit 1.[2]

## PRELIMINARY STATEMENT

Petitioner Edries is an indigent, unmarried 40 year-old teacher from a poor family in the Sudan. He has been imprisoned at the Guantánamo Bay military facility for nearly four years. The Petitioners' motion requests: (i) a writ of *habeas corpus*, compelling Respondents to either release Petitioner Edries or establish a lawful basis for his detention; or alternatively, (2) an order directing Respondents to show cause why a writ of *habeas corpus* should not be granted.

Respondents oppose the motion on three grounds: (i) the relief requested by Petitioner Edries should not be considered until the Court first rules on Respondents' Respondents' Motion for Order to Show Cause why the case should not be dismissed on the ground that the Petitioner Al-Rawi lacks standing to serve as Next Friend; (ii) this action should be dismissed in favor of an earlier-filed *pro se habeas* petition; and (iii) this action should be stayed pending resolution of appeals in other cases involving Guantánamo Bay prisoners. Respondents' arguments provide no basis for denial of the relief requested by the Petitioners in their motion. To the contrary, Respondents' arguments are plainly

---

[2]   Respondents have moved for an order to show cause why Petitioners' Motion should not be dismissed or alternatively for a stay of proceedings. The principal argument in support of their motion to dismiss is that Petitioner Al-Rawi, a fellow detainee at Guantánamo Bay, lacks standing to serve as Next Friend. Because the issue of Respondents' challenge to the standing of Petitioners is implicated in Petitioners' Motion, as well as Respondents' Motion for Order to Show Cause, Petitioners address both in this memorandum of law.

2

intended to promote continued delay of Petitioner Edries' access to the Court. After nearly four years of imprisonment, and virtually no communication with the outside world, Petitioner Edries is entitled if not to his freedom, then at least to knowing the factual basis for his imprisonment and the opportunity to present his defense.

Respondents' opposition to the motion rests on litigation gamesmanship clearly intended to delay Petitioner Edries from realizing meaningful access to the Court. Respondents first ask the Court to defer consideration of Petitioner's motion until after the Court first resolves Respondents' challenge to the Next Friend standing of Petitioner Al-Rawi. But Respondents have specifically avoided putting their challenge to the Court for review. Instead of filing a motion to dismiss the petition – which would have triggered a briefing schedule and set the issue for resolution -- Respondents submitted a motion for an order to show cause why the case should not be dismissed on September 23, 2005. Although Respondents filed with their motion a 22 page memorandum of law on their challenge to standing, Respondents declined to seek entry of the order to show cause.[3] Because Respondents failed to seek entry of their order to show cause, there has been no briefing schedule entered in the matter, and their application has languished on the court docket.

Respondents, however, continue to cite their challenge to Petitioners' standing in this case as a basis for opposing every request or action by Petitioners and their counsel.

---

[3] In Respondents' Memorandum In Opposition to Petitioners' Motion, Respondents expressly rely on their Motion For An Order To Show Cause, and thus Petitioners here cite to both Respondents' Memorandum in Opposition to Petitioners' Motion ["Respondents' Opp"] and to Respondents' Motion for Order to Show Cause.

22049532v2

As a result of their gamesmanship, Respondents have achieved a self-imposed stay of their obligations in this action, while at the same time avoid resolution of the standing issue.

Respondents presumably have avoided the actual resolution of their standing challenge because their arguments rely on a misconstruction of the law and misstatement of the facts. As shown below, Respondents' misstate the standing requirements for a Next Friend as announced by the Supreme Court in *Whitmore v. Arkansas,* 495 U.S. 149 (1990).

In addition, Respondents have misrepresented the facts in this matter. Perhaps most egregious, Respondents argue that the Petitioners have failed to show that Petitioner Edries is inaccessible or that he would want a *habeas* proceeding commenced on his behalf, and therefore the Court should not allow Petitioner Al-Rawi to serve as his Next Friend and commence an action on his behalf. Respondents rely on affidavits for their arguments that they have explained to prisoners their right to file a *habeas* action, that prisoners are afforded the opportunity to send and receive mail to the Court and to family and friends, and that the Department of Defense has taken affirmative steps to facilitate legal representation for prisoners who want counsel. On that basis, Respondents argue that "it simply cannot be assumed that the detainees seeking *habeas* relief in [these Next Friend actions] cannot file petitions on their own behalf." [Respondents' Mot. For Order To Show Cause, at p. 8].

Respondents' argument is flatly contradicted by a February 12, 2005 letter from Petitioner Edries to the Court. [attached as Exh.1]. Petitioner Edries' single page handwritten letter in Arabic requests the Court's assistance to challenge his detention, and states that he cannot afford counsel and has been unable to communicate with his family.

Despite Respondents' claim that they process prisoner mail within an average of 14 days, Petitioner Edries' letter to the Court was not received until August 2, 2005 – nearly six months later. Respondents' arguments that there is no evidence that Petitioner Edries desires that a *habeas* action be filed on his behalf is not only contradicted by his February 12, 2005 letter, but also by this Court's own construction of the letter, once received six months later. On August 2, 2005, the Court accepted Petitioner Edries letter and construed it as a petition for *habeas* relief, and ordered the case docketed as a *pro se* action.[4]

At the same time that Respondents argued in submissions to the Court that Petitioners have failed to adduce any evidence that Petitioner Edries desires to commence a *pro se* action, and that Petitioner Edries should have no difficulty communicating his desire because correspondence takes on average 14 days to process -- Respondents must have, or certainly should have, been aware of Petitioner Edries February 12, 2005 letter, as well as the fact that it took six months to be delivered to a federal court in the Washington, D.C..[5] Then, on August 10, 2005, Respondents filed a motion for a stay in the *pro se* action with the result that after six months awaiting delivery, Petitioner Edries' *pro se* action faced a stay before Petitioner Edries even learned that his letter has been received by the Court. Thus, the premise of Respondents' challenge to the Petitioners' standing is untrue.

---

[4]  Because Edries' Arabic name was spelled differently when translated into English, Petitioners' counsel in this action was unaware that Petitioner Edries had filed a *pro se* action until notified by Respondents' counsel.

[5]  Respondents' Motion for an Order to Show Cause was filed on September 23, 2005, and their Memorandum in Opposition to Petitioners' Motion was filed on October 7, 2005.

Under the extraordinary circumstances of this proceeding, the standing of Petitioner Al-Rawi, as Next Friend, will not upset settled standing doctrine nor lead to a parade of horribles that Respondents warn against. Petitioner Edries – as the Court has independently determined - wants an action filed on his behalf. Under the established rules in place for these proceedings, Petitioner Al-Rawi's standing does little more than allow the commencement of proceedings: Petitioners' counsel will be allowed two visits with Petitioner Edries, and by the conclusion of the second visit, Petitioner Edries must expressly retain counsel in order for the action to continue.[6]

Similarly, Respondents have failed to demonstrate any reason for Petitioners' action to be stayed. The Petitioner, imprisoned for nearly four years without an opportunity to see the evidence against him or to communicate with the outside world, other than his letter to the Court, has already endured substantial, and improper, delay. Respondents' litigation strategy has been designed to create delay, and largely has been successful. For example, after Petitioners' counsel in this Next Friend proceeding discovered that Petitioner Edries had written a letter to the Court that was docketed as a *pro se* action, on September 28, 2005, Petitioners' counsel contacted Respondents' counsel and asked that Respondents' consent to the appointment of Petitioners' counsel to serve as *pro bono* counsel to Petitioner Edries in his *pro se* action, and then the Next Friend proceeding could be

---

[6]  As Respondents point out in their Motion, the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba in *In re Guantánamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 8, 2004), § III.C, permits counsel two visits with a detainee to determine whether the detainee desires representation.

22049532v2

dismissed and all of these motions mooted. Respondents' counsel, however, refused several such requests, and instead insisted on litigating both the Motion For Appointment As Counsel in the *pro se* case[7], and these motions in the Next Friend proceeding – needlessly wasting resources and delaying review of the substantive issues in these proceedings.

Respondents advance the similarly meritless argument that, to the extent that the Court allows the proceeding to continue and Respondents are ordered to produce the facts underlying the basis for the prisoners' detention, the Court should enter a scheduling order that protects Respondents against undue burden. Under order of the Deputy Secretary of Defense, the factual record of the proceedings before the Combatant Status Review Tribunal are to be prepared within three days from the announcement of the Tribunal's decision, and Respondents have not shown that the records do not exist. Moreover, under the applicable protective order, classified information may be provided to counsel with security clearance, and Respondents otherwise have not shown specifically the burdens that they would face if required to copy and produce a file that already exists. Finally, with due respect to the burden on Respondents, Petitioner Edries has been "burdened" by being in prison for nearly four years without notice of the factual charges against him. Under these circumstances, it is not inappropriate to require Respondents to expedite the production of the factual record for his detention, even at the expense of some as yet unidentified inconvenience.

---

[7]   Docket number 05-CV-01555 (JR) (October 3, 2005), attached as Exhibit 2.

## ARGUMENT

### I. RESPONDENTS' ARGUMENTS THAT PETITIONERS LACK STANDING ARE WITHOUT MERIT.

The Supreme Court has specifically held that detainees at Guantánamo are entitled to challenge their detention and the conditions under which they are held, pursuant to 28 U.S.C. § 2241. Thus, Petitioner Edries has a right to make use of § 2241. *See Rasul v. Bush*, 542 U.S. 466, 563 (2004). Based on his February 2005 letter, the Court already has determined that Petitioner Edries wants to prosecute a *pro se* action. Petitioner Edries has been denied meaningful access to counsel, family and to this Court. Petitioner Al-Rawi, a fellow detainee acting in the capacity of Next Friend, has authorized the commencement of this action on behalf of Petitioner Edries.

Respondents cite the Supreme Court's opinion in *Whitmore* as support for their argument that Petitioner Al-Rawi lacks standing to file a *habeas* action as Next Friend to Petitioner Edries. Respondents, however, misstate the Court's holding, as well as its application to this case.

In *Whitmore*, the Supreme Court refused standing to a death row prisoner who sought to prosecute a *habeas* action on behalf of another death row prisoner, Simmons, who was facing imminent execution. In that case, Simmons had waived all appeals and affirmatively stated that he did not want to pursue legal challenges to his execution. The trial and appellate courts all held that he was competent to make his own decisions. Against that backdrop, the Supreme Court explained the two standing requirements for a Next Friend seeking to prosecute a *habeas* action on behalf of a prisoner. The 'next friend' must: (1) provide an adequate explanation – such as inaccessibility – as to why the real

party in interest cannot appear on his own behalf to prosecute the action and (2) must be dedicated to the best interests of the person on whose behalf he seeks to litigate. *See Whitmore*, 495 U.S. at 163-64 (internal citations omitted).

    1.    Respondents should not be permitted to obstruct communication with Petitioners, and at the same time <u>urge the Court to deny the Motion for insufficiency of evidence.</u>

Although Petitioner Al-Rawi satisfies the traditional standing requirements under the *Whitmore* standards, it must be noted from the very start that the playing field in this proceeding is not just tilted in Respondents' favor, but that they in fact have written self-serving rules and thereby control it. Respondents argue as a threshold matter that Petitioners: (i) failed to present affirmative evidence that Petitioner Edries wants a *habeas* proceeding filed on his behalf, and (ii) failed to present evidence of Petitioner Al-Rawi's relationship with Petitioner Edries to show that this action is consistent with Petitioner Edries' wishes.

Respondents, however, exercise absolute control over, and have precluded meaningful access to or from, Petitioners Edries and Al-Rawi. Petitioner Edries has been held prisoner for nearly four years, yet to this day, Respondents still have not told Petitioner Edries' family that he is a prisoner at Guantánamo. Unlike Simmons – the death row inmate whose interests were in issue in *Whitmore*, Petitioner Edries cannot testify in Court as to his desires, cannot testify by telephone, and correspondence to the Court, if delivered at all, will based on experience arrive far too late to affect the resolution of this issue.

22049532v2

Respondents also exercise control over Petitioner Al-Rawi. Respondents urge the Court to refuse all relief requested in this proceeding, because Petitioners have failed to show sufficient evidence regarding Petitioner Al-Rawi's relationship with Petitioner Edries. But Respondents' argument relies on litigation cynicism at its most offensive – Respondents control, and have foreclosed, communication with Petitioner Al-Rawi. In *Whitmore* and the other cases relied on by Respondents, the courts resolved the standing issue based on a full evidentiary record.

As a fundamental matter of fairness and process, Respondents must allow meaningful, immediate access to Petitioners Edries and Al-Rawi before the Government can assert its insufficiency of evidence argument on standing. The Government should produce Petitioners Edries and Al-Rawi for testimony or at a minimum allow for immediate communication, whether by personal visit or telephone.

All of these limitations are under the exclusive control, subject to the Court's decision on the Petitioner's motion, of Respondents. Respondents, for example, could, if they wanted, allow for expedited communication to resolve this issue – Respondents could allow for an immediate visit by counsel, telephone call or video link with the Court. Instead, Respondents preclude access to the evidence in issue, and then exploit the absence of the self-same evidence to which they have denied access. As a fundamental matter of fairness and process, under these circumstances, Respondents should not be heard to advance an argument based on an insufficiency of evidence to the extent that they control access to the evidence; at the very least, Petitioners should enjoy a presumption that the evidence, if Respondents allowed it to be collected, would be favorable to Petitioners.

Since the issue of standing can be revisited at any time in a proceeding, Petitioners at the very least are entitled to a presumption at least for some reasonable period of time in order to collect the challenged evidence.

2. Petitioner Al-Rawi satisfies the Standing Requirements under *Whitmore*

There can be no meaningful dispute that Petitioner Edries is "inaccessible." He is an Arabic-speaking, indigent prisoner who has been held in a military installation in Cuba for nearly four years. Based on his February 2005 letter to the Court, he had been held, at least up to that time, incommunicado, and has been unable to speak to his family members or to counsel. The only known correspondence from Petitioner Edries to have reached the outside world was a letter to this Court. Respondents might cite this letter as an example of the ease with which Petitioners Edries can communicate with the outside world - except that his letter took six months to be delivered. There can be no serious dispute that a six month wait between the time letters are sent to and received by the Court constitutes inaccessibility, at least with respect to meaningful communication and prosecution of his claims in Court.[8]

Respondents' arguments about the prisoners' ability to communicate their interests and desires, and thus their access to the Court, rest entirely on their affidavit evidence regarding the mail process and the "average" time for processing pieces of correspondence. In practice, however, when communications count, the Petitioners have been unable to

---

[8] To the extent that Edries were even permitted to post a letter to his family in the Sudan, if his correspondence with a federal court in the nation's capitol takes six months, one can only wonder how long a letter would take to reach his family in a poor village in impoverished and war-torn Port of Sudan, Sudan.

11

communicate. Petitioner Edries' plaintive request in his letter to the Court, delivered six months later, provides no better evidence of his utter inaccessibility. Respondents' reliance on general affidavit evidence, without either soliciting evidence directly from Petitioner Edries or even acknowledging Petitioner Edries' actual experience with mail delivery, is untenable.

Under these circumstances, courts have had little difficulty finding petitioners to be inaccessible. The Fourth Circuit in the *Hamdi v. Rumsfeld*, 294 F.3d 598, 604 (4th Cir. 2002), *rev'd on other grounds*, 542 U.S. 507 (2004) observed that it was "undisputed that Hamdi meets the first prong of *Whitmore* as a result of his inaccessibility."

Under the *Whitmore* standard, the Next Friend must also show that he is dedicated to the best interests of Petitioner Edries. This prong is intended to preclude meddlers and interlopers, even those who may be well-intentioned, from interfering with the prisoner's own interests and held views. *See Whitmore* 495 U.S. at 164. In this case, we know for a fact that Petitioner Al-Rawi's actions are consistent with Petitioner Edries' interests, because Edries has expressed his desire in his letter to the Court.

Moreover, under the rules established for the Guantánamo cases, the Next Friend standing does nothing more than allow the commencement of an action – which is completely consistent with Petitioner Edries' wishes because his letter to the Court has been construed as a *pro se* petition. But Al-Rawi's petition thereafter only will proceed if,

after two visits by counsel, Petitioner Edries executes an authorization expressly retaining counsel.[9]

Respondents wrongly argue that under *Whitmore*, Petitioner Al-Rawi must establish a significant relationship with Petitioner Edries in order to meet the standing requirements of a Next Friend. The Court in *Whitmore* did not state that a significant relationship was required, but rather only observed that "it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest." *Whitmore*, 495 U.S. at 164. Other courts have addressed whether a significant relationship, or any relationship, is required. In *Rumsfeld v. Padilla,* 352 F.3d 695 (2d Cir. 2003), *rev'd on other grounds,* 542 U.S. 426 (2004), the Second Circuit rejected Respondents' argument that a "Next Friend" must be a family member. *See id.* at 704. In *Hamdi*, the Fourth Circuit held that a significant relationship must be shown, but reserved on how significant the relationship must be.

Respondents have, for all practical purposes, eliminated Petitioner Edries' significant relationships, other than his fellow detainees. Petitioner Edries has not seen, spoken to, anyone outside of the Guantánamo prison facility for nearly four years and, at least as of February 2005, has not communicated with anyone writing. Because of the length of time of his detention and the complete absence of communication, there might not

---

[9] As Respondents point out in their Motion, the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba in *In re Guantánamo Detainee Cases*, No. 02-CV-0299, *et al.* (D.D.C. Nov. 8, 2004), § III.C, permits counsel two visits with a detainee to determine whether the detainee desires representation.

22049532v2

even be another living person, outside of Guantánamo, who has a significant relationship with Petitioner Edries and who knows of his detention.

## II. RESPONDENTS HAVE FAILED TO SHOW ANY BASIS FOR A STAY TO BE ENTERED IN THIS ACTION

Respondents argue that, in the alternative, this Court should stay Petitioner Edries' case until "the resolution of all appeals" in three cases pending in the Federal District Court for the District of Columbia [Respondents' Mot. For Order To Show Cause at p.5 and 15]. However, Respondents have not provided a compelling justification for a stay, and certainly none that would outweigh Petitioner Edries' right to be freed from captivity or at a minimum to know the factual basis for his detention.

Respondents should be required to file the factual return in Petitioner Edries' case. Respondents assert that producing the factual returns would be unduly burdensome, but fail to provide a shred of detail to support their claim. This Court has already required Respondents to file factual returns in the cases of other Guantánamo Bay detainees whose *habeas corpus* petitions are pending in this Court.[10] The factual returns were required to be

---

[10] *See, e.g., Kurnaz v. Bush*, No. 04-CV-01135 (ESH), 2005 WL 8329542, at *1 (D.D.C. Apr. 12, 2005) (stating that *habeas* counsel require access to the full factual returns now "to ensure that the proceedings can continue in an orderly fashion in the event that detainees prevail on appeal"); *Al-Adahi v. Bush*, No. 05-CV-00280 (GK), slip op. at 2 & n.1 (D.D.C. Apr. 29, 2005) (ordering production of factual returns so that petitioners' counsel "can begin preparing their defense well in advance of any ruling by the Court of Appeals"); *Al-Anazi v. Bush*, No. 05-CV-00345 (JBD), slip op. at 20 (D.D.C. Apr. 21, 2005) (ordering the U.S. Government to produce factual returns and noting that "the factual returns appear necessary for petitioners' counsel effectively to represent petitioners," and "even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *see also Al-Shamri*

22049532v2

compiled within three days of the decision of the Combatant Status Review Board, and they were all to be completed by March 2005. Thus, an order to produce the factual return would only require Respondents to copy what they already have collected in a file. Moreover, Respondents' professed concerns with respect to the classified nature of certain information are already addressed in the amended protective order entered in this case, which allows production of classified material only to counsel who have received security clearance. Indeed, the time and resources that Respondents have needlessly spent, and caused Petitioners to spend, litigating these motions could more appropriately have been applied to the production of factual returns.

Finally, Respondents assert that there is no point in providing Petitioners with a factual return because the contents cannot be shared with Petitioner Edries. That argument, of course, overlooks that the factual return can and should be shared with Petitioners' counsel (once they have received security clearance). In order to provide Petitioner Edries with meaningful advice and counsel, his counsel need, and are entitled, to know, the factual charge for which he has been, and will continue to be held, prisoner in a United States military facility halfway around the world from his home.[11]

## CONCLUSION

---

*v. Bush*, No. 05-CV-00551 (RWR), slip op. at 4 (D.D.C. May 10, 2005) (staying proceedings but ordering the Government to produce factual returns); *El-Banna v. Bush*, No. 04-CV-01144 (RWR), slip op. at 7 (D.D.C. Apr. 8, 2005) (same); *Errachidi v. Bush*, No. 05-CV-00640 (EGS) (D.D.C. Apr. 21, 2005) (minute order) (same).

[11]   Petitioners do not object to the consolidation of this action with Edries *pro se* action, docket number 05-CV-01555 (JR) (August 2, 2005), Exh. 1.

22049532v2

WHEREFORE, Petitioners respectfully request that the Court grant the Petitioners' Petition for a Writ of *Habeas Corpus* or Alternatively for an Order to Show Cause.

Dated:    October 17, 2005

Respectfully submitted,
Counsel for Petitioners:

/s/ John B. Missing
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W.
Washington, D.C. 20004-1169
Tel: (202) 383 8000
Fax: (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Hadassa Waxman
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6386


*Of Counsel*
Barbara Olshansky
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

22049532v2