IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ABRAHIM OTHMAN<br>ABRAHIM EDRIES,<br><br>BISHER AL-RAWI,<br><br>*Petitioners,*<br><br>*v.*<br><br>GEORGE W. BUSH, *et al.,*<br><br>*Respondents.* | Civil Action No. 1:05CV01725<br>(JR) |

# EXHIBIT 2

**PETITIONERS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR THE IMMEDIATE ISSUANCE OF A WRIT OF *HABEAS
CORPUS*, OR ALTERNATIVELY FOR AN ORDER TO SHOW CAUSE**

# PART 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- x

IBRAHIM OSMAN IBRAHIM IDRIS,        :
      Detainee,
      Guantanamo Bay Naval Station    :
      Guantanamo Bay, Cuba,

                               :

*Petitioner/Plaintiff,*

                               :   **MOTION FOR APPOINTMENT**
                                      **AS COUNSEL**
v.

                               :   No.  05-CV-1555 (JR)

GEORGE W. BUSH,
      President of the United States    :
      The White House
      1600 Pennsylvania Ave., N.W.    :
      Washington, D.C. 20500;

                               :

DONALD RUMSFELD,
      Secretary, United States    :
      Department of Defense
      1000 Defense Pentagon
      Washington, D.C. 20301-1000;

                               :

ARMY BRIG. GEN. JAY HOOD,
      Commander, Joint Task Force - GTMO    :
      JTF-GTMO
      APO AE 09360; and    :

ARMY COL. MIKE BUMGARNER,
      Commander, Joint Detention    :
        Operations Group - JTF-GTMO,    :
      JTF-GTMO
      APO AE 09360,    :

*Respondents/Defendants.*    :

-------------------------------------------------------------------- x

## MOTION FOR APPOINTMENT AS COUNSEL

### Introduction.

This motion is respectfully submitted on behalf of Petitioner Ibrahim Osman

Ibrahim Idris, a detainee at the United States Naval Station at Guantanamo Bay, Cuba,

and Debevoise & Plimpton LLP ("Debevoise") for an order appointing Debevoise *pro*

*bono* counsel to Petitioner Idris. This *pro se* action was docketed on August 2, 2005,

following the Court's receipt of Petitioner's single page handwritten letter to the Court,

dated February 12, 2005, requesting relief from detention. Debevoise represents

Petitioner and his Next Friend in another *habeas* proceeding seeking relief from detention

that was commenced shortly after this action was docketed without knowledge of

Petitioner's earlier letter to this Court. By this motion, Petitioner and Debevoise seek an

order appointing Debevoise *pro bono* counsel in the above-captioned action. If such an

order is entered, Petitioner and Debevoise will then dismiss the later-filed action.

Petitioner, through Debevoise, advised Respondents of his intention to seek appointment

of Debevoise as *pro bono* counsel and requested their consent. Respondents neither

agreed to consent to the appointment nor stated that they opposed the appointment, but

instead reserved their right to respond to the motion.

As explained below, Debevoise already has been authorized to represent

Petitioner and to commence legal proceedings on his behalf through Petitioner's Next

Friend, Bisher Al-Rawi, a fellow detainee. On that basis, Debevoise, unaware of

Petitioner's handwritten letter addressed to the Court, commenced the later-filed

proceeding on behalf of Petitioner and his Next Friend. On the basis of the Next Friend

authorization, Debevoise has the authority to enter an appearance and to represent Petitioner in this action, even absent appointment by the Court.

The Respondents, however, have challenged the standing of Petitioner's Next Friend to authorize the commencement of the later-filed proceeding, and on that basis have moved to dismiss that proceeding.[1]  To avoid needless motion practice associated with Respondents' challenge, rather than entering an appearance in this action on the basis of the Next Friend authorization, Debevoise asked Respondents to consent to the appointment by the Court of Debevoise as *pro bono* counsel to Petitioner in this action. Respondents, however, declined to consent to the appointment of Debevoise as *pro bono* counsel in this action and reserved their right to oppose it.

Petitioner is a paradigmatic *pro se* litigant in need of and meriting the appointment of *pro bono* counsel.  His single page, Arabic handwritten letter to the Court – which apparently took almost six months for delivery – requests assistance and specifically avers that he cannot afford counsel.  In other matters before the Court and in recognition of the propriety of *pro bono* counsel in these cases, Respondents have represented that they have arranged with the American Bar Association to provide *pro bono* counsel for detainees at Guantánamo.

Debevoise has agreed to represent Petitioner and has affirmed that it will not seek payment of fees or reimbursement of expenses in connection with this representation.

---

[1]    In the event that the *habeas* Petition previously filed by Petitioner and Debevoise is not voluntarily dismissed, as discussed above, Petitioner and his Next Friend, through Debevoise, intend to oppose Respondents' motion to dismiss on the basis that Mr. Al-Rawi is qualified to serve as Petitioner's Next Friend.

Debevoise, an international law firm with over 600 lawyers, has a long history of
demonstrated commitment to public service and is well qualified to serve as counsel in
accordance with the highest ethical and professional standards.  Petitioner and Debevoise
thus respectfully request that the Court enter an order appointing Debevoise as counsel to
Petitioner in this action.

### Brief Statement of Facts.

A citizen of the Sudan, Petitioner Ibrahim Osman Ibrahim Idris, ISN 036, is
detained at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo").
Petitioner Idris wrote a letter to this Court, dated February 12, 2005 (a copy of which is
attached hereto as Exhibit 1), requesting judicial intervention to contest his detention and
classification as an enemy combatant.[2]  In his letter to the Court, Petitioner Idris
explained that he is indigent and cannot afford counsel and asked for the Court's
assistance.  Although the date of the delivery to the Court of Petitioner's February 12
letter is not known, almost six months after it was dated, the Court accepted Petitioner's
letter as a *pro se habeas* petition and filed it on August 2, 2005 in the above-captioned
action.

There is no evidence that Petitioner Idris has received confirmation that the Court
received his letter or knows that the Court has taken any action in response to it.  It is
therefore not surprising that in addition to writing to the Court, Petitioner Idris also spoke

---

[2]    Petitioner Idris' original letter was handwritten and signed in Arabic.  The translation
of his original letter that was docketed in this action spelled Petitioner's name in
English in the manner reflected in the caption, above.

with a fellow detainee, who is represented by counsel, about obtaining legal counsel to

commence an action on his behalf. In a letter dated January 4, 2005, Bisher Al-Rawi,

another detainee who is represented by George Brent Mickum IV, confirmed that

Petitioner Idris had requested that Mr. Al-Rawi seek Mr. Mickum's assistance in

retaining an attorney to commence an action on behalf of Petitioner. Mr. Al-Rawi's letter

was written in English, included requests for attorneys on behalf of a number of

detainees, spelled Petitioner's name as Edries, and gave his ISN number as 036. (*See*

Declaration of George Brent Mickum IV, attached as Exhibit A to Petition for Issuance

of a Writ of *Habeas Corpus*, a copy of which is attached as Exhibit 2).

Mr. Mickum sought the assistance of the Center for Constitutional Rights

("CCR") in retaining counsel for the detainees listed in the letter. CCR, in turn, sought

*pro bono* assistance from Debevoise. On August 30, 2005, Debevoise filed a *habeas*

petition on behalf of Petitioner Idris with Mr. Al-Rawi as his next friend. (*See* Exhibit 2).

At the time that Debevoise filed the petition, the firm was unaware of Petitioner's

February 12 letter and, moreover, was unaware that an action on behalf of Petitioner had

been docketed with the Court. On September 23, 2005, Debevoise became aware of the

previously filed *pro se* petition when Respondents filed a Notice of Multiple Petitions

Filed by Guantanamo Bay Detainee (a copy of which is attached hereto as Exhibit 3).

## ARGUMENT

There are two petitions filed by or on behalf of Petitioner Idris that are currently

pending before this Court, both of which contest his detention by the United States

Government at the Guantanamo Bay facility: (i) Petitioner's February 12, 2005 two-

5

paragraph handwritten letter in Arabic, which was construed as a petition for relief and docketed with the Court on August 2, 2005 in this action; and (ii) Petitioner's petition for relief, by his Next Friend, filed on his behalf by Debevoise with the Court on August 30, 2005 under docket number 05-CV-1725 (RWR). Because Petitioner's *pro se* petition was docketed before Debevoise filed a petition on his behalf, we respectfully request that the Court appoint Debevoise as counsel to Petitioner in this action. After that appointment, Debevoise will withdraw the later-filed *habeas* petition.

### A.    All Four Relevant Factors Weigh In Favor Of Appointing Counsel

The Local Rules of this Court list four factors to be considered in deciding whether to appoint counsel for a *pro se* litigant. *See* Local Rule 83.11(b)3(i)-(iv). All of those factors weigh in favor of appointing Debevoise as counsel for Petitioner:

#### 1.    The nature and complexity of the action

The writ of *habeas corpus* is "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi v. Rumsfeld,* 542 U.S. 507, 596 (2004). For that check to be effective, a *habeas* petitioner must be able to present his case properly and, therefore, it is particularly important that *pro se habeas* petitioners be appointed counsel. Moreover, *habeas* petitions by detainees at Guantanamo Bay present novel and complex legal issues. As a non-lawyer unfamiliar with the structure of the court system or the specific requirements for *habeas* petitions, it will be impossible for Petitioner to challenge his detention effectively without the assistance of counsel.

### 2.    The potential merit of the *pro se* party's claims

The Supreme Court has held that the federal courts have jurisdiction to hear

*habeas* claims by detainees at Guantanamo. *See Rasul v. Bush,* 124 S. Ct. 2686, 2698

(2004) (holding that "§2241 confers on the District Court jurisdiction to hear petitioners'

habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval

Base"). Petitioner's *habeas* petition is properly before this Court.  He has been detained

for nearly four years without a court hearing regarding the basis for his detention.  The

writ of *habeas corpus* was designed to prevent illegal detention.  Petitioner must have the

ability to present his claims effectively to the Court.

### 3.    The demonstrated inability of the *pro se* party to retain counsel by other means

In his letter of February 12, 2005, Petitioner states that he cannot afford legal

representation (*see* Exhibit 1), and he has also sought counsel through his request to Mr.

Al-Rawi.  Given Mr. Idris' detention and inability to communicate in a timely manner

with other potential attorneys, appointment of Debevoise is the most efficient method for

him to obtain representation.

### 4.    The interests of justice will be served by appointment of counsel

Assistance of counsel for *habeas* petitioners is so important that federal law

explicitly directs each district court to establish a plan "for furnishing representation for

any [*habeas* petitioner] financially unable to obtain adequate representation" if the

interests of justice require it. 18 U.S.C.A. § 3006A(a)(2)(B).  Petitioner lived in Sudan

and was arrested in Pakistan.  *See* Exhibit 1.  Upon information and belief, he has never

7

lived in the United States and is therefore less familiar with the federal court system and its requirements than almost any litigant before this Court. Based on his February 12, 2005 letter to the Court, he does not write English and faces significant barriers to communicating with the Court, as evidenced by the six-month delay between the date on his letter and when it was filed with the Court. The interests of justice will be best served by appointing counsel for Petitioner so that issues related to his detention can be properly and, we hope, timely presented to the Court.

**B.      The Government Has Facilitated Other
         Detainees In Obtaining Pro Bono Legal Representation**

The United States Government has instituted procedures to assign *pro bono* counsel to other Guantanamo detainees who have requested it. In *habeas* proceedings brought by other detainees, the Government has asserted that all detainees have been notified in writing that the American Bar Association ("ABA") will provide *pro bono* attorneys to represent the detainees in *habeas* proceedings and have been provided with the ABA's address and the means to write to it. *See Doe v. Bush*, 05-CV-1704 (JR), Respondents' Motion for Order to Show Cause Why Case Should not be Dismissed for Lack of Proper "Next Friend" Standing (a copy of which is attached hereto as Exhibit 4), at 8-9. There is no practical distinction between appointing Debevoise as counsel to Petitioner and having the ABA appoint *pro bono* counsel for him, except that the appointment of Debevoise would be more efficient and permit this action to proceed more quickly.

### C. Debevoise Is Well Qualified To Take On This Representation

Debevoise is well qualified to represent Petitioner Idris. Debevoise is a leading international law firm with over 600 lawyers in offices in Washington, D.C. and New York, as well as other cities throughout the world. The firm regularly counsels and represents clients across a range of disciplines. The firm's regulatory and criminal defense work is among the most active part of the firm's litigation practice, and the firm's litigators include former United States Attorneys and several former Assistant United States Attorneys and lawyers who are recognized as among the most capable in the profession.

The firm has a longstanding and deep commitment to *pro bono* representation and is prepared to devote considerable resources to this litigation.[3] Seven lawyers appear in this motion, and they represent only a fraction of the Debevoise lawyers and paraprofessionals who have committed to participate in the representation of Petitioner. Debevoise has already demonstrated its commitment to the zealous and professional representation of Petitioner Idris by the filing of a *habeas* petition and related motions on his behalf.

---

[3]  Consistent with the firm's position in the *habeas* petition it filed on behalf of Petitioner Idris, Debevoise will not seek payment or reimbursement of any fees or expenses related to this proceeding. *See* Exhibit 2 at Certification of Representation without Compensation.

**D.    The Court Has Authority To
Appoint Debevoise As Counsel**

In its discretion, this Court may appoint Debevoise to represent Petitioner in this

action.  Under Local Rule 83.11(b)(3), "[w]hen leave has been granted pursuant to 28

U.S.C. § 1915 for a *pro* se litigant to proceed *in forma pauperis,* the judge to whom the

case is assigned may, on application by the *pro se* party or otherwise, appoint an attorney

from the [Civil Pro Bono] Panel to represent such party."

Debevoise-is not a member of this Court's Civil Pro Bono panel, but, pursuant to

Local Civil Rule 83.11(b)(11), the Court may look outside of the Panel for appointments

in *pro se* cases: "Nothing in this Rule shall be interpreted as preventing a judge from

requesting an attorney, law firm or legal organization that is not on the Panel to represent

a litigant who is otherwise proceeding pro se in this Court."  Accordingly, the

undersigned counsel respectfully request that they be appointed as attorneys of record for

Petitioner Idris in this action.

## CONCLUSION

For the reasons discussed above, the undersigned counsel respectfully request that

this Court grant their motion for appointment as counsel to Petitioner Idris.

Dated: October 3, 2005                    Respectfully submitted,
      Washington, D.C.


/s/ John B. Missing
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar. No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel: (202) 383 8000
Fax: (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Hadassa Waxman
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6386

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------- x

IBRAHIM OSMAN IBRAHIM IDRIS,                                          :
     Detainee,
     Guantanamo Bay Naval Station                                  :
     Guantanamo Bay, Cuba,
                                                                  :

*Petitioner/Plaintiff,*                                              :

                                                                  :    MOTION FOR APPOINTMENT
v.                                                                        AS COUNSEL

                                                                  :
GEORGE W. BUSH,                                                           No. 05-CV-1555 (JR)
     President of the United States                                 :
     The White House
     1600 Pennsylvania Ave., N.W.
     Washington, D.C. 20500;                                        :

DONALD RUMSFELD,                                                     :
     Secretary, United States
     Department of Defense                                          :
     1000 Defense Pentagon
     Washington, D.C. 20301-1000;                                  :

ARMY BRIG. GEN. JAY HOOD,                                            :
     Commander, Joint Task Force - GTMO
     JTF-GTMO                                                       :
     APO AE 09360; and

ARMY COL. MIKE BUMGARNER,                                            :
     Commander, Joint Detention
       Operations Group - JTF-GTMO,                               :
     JTF-GTMO
     APO AE 09360,

*Respondents/Defendants.*                                            :

-------------------------------------------------------------------- x

# EXHIBIT 1

**FILED**

AUG − 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Leave to file without
Prepayment of Cost **GRANTED**

*Rosemary M Colly*
*2 Aug 2005*

IBRAHIM OSMAN IBRAHIM IDRIS
Camp Delta
Washington, D.C. 20355

        Petitioner

    v.

GEORGE W. BUSH, President of
the United States

DONALD RUMSFELD, Secretary,
United States Department of Defense

JAY HOOD, Army Brigadier General,
Commander, Joint Task Force-GTMO

MICHAEL I. BUMGARNER, Army
Colonel, Commander, Joint Detention
Operations Group - JTF-GTMO

Civil Action No.

CASE NUMBER 1:05CV01555

JUDGE: James Robertson

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 08/02/2005

**PETITION FOR WRIT OF HABEAS CORPUS**

**FILED**

AUG - 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

GUAN-2005-T03383
The District of Columbia district court        Ibrahim Osman Ibrahim Idris
Washington, DC 20001                           detainee Delta camp
                                               Guantanamo Bay Naval Base
                                               Guantanamo Bay Cuba

Subject: objection for detention                          **05 1555**
Mr.: the respected civil judge in the American Court

First I hope you are in good health, I greet you peacefully. Furthermore,
I Mr. Ibrahim Osman Ibrahim Idris from the Port Sudan city in Sudan, I am forty years
old, I was a Koran teacher in Sudan, I went to Pakistan for the purpose of spreading the
religion of Islam at the end of 2001 or at the beginning of 2002. The Pakistani police
arrested me and I was handed over to the Americans then I was transferred to Cuba. At
the present time I am in Guantanamo almost since January 2002, until today for more
than three years the revision committee of the fighters CSRT has decided to consider me
an enemy combatant, knowingly that I am human without any relationship either from far
or close with what has happened in America or any relationship to Taliban or Al Quaida.
After the committee decided that I am an enemy combatant and they will present me to
the second committee to observe if I pose any danger to America or not, if the second
committee decides that I do not pose any danger then I may be released, but if I do pose
danger then I will remain detained in Guantanamo.
 Sir, for this reason I ask your honor to look into my case, and I object to the committee's
decision in considering me an enemy combatant, I also object for detaining me for three
years in this prison far away from my brothers and sisters. As you know I am from a very
poor family in Sudan and I want to leave this place to resume my normal life with my
family. I also want to get married because I am still single and I want to help my family.
I can't even appoint a lawyer because of my poor financial situation, not even call my
family because of the communication difficulties in the area I live in.
Finally Mr. Judge, I hope you will look into my case and try to speed up the process.
Your highness, Accept the utmost respect and appreciation.

Signature of sender                              signature of addressee

02.12_05    GUAN-2005-T

إبراهيم عثمان إبراهيم إدريس
أسرع كامب دلتا
قوانتانامو باي القاعدة البحريه
قوانتانامو باي كوبــا

محكمة مقاطعة كولومبيا
واشنطن 20001    **FILED**

AUG - 2 2005

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

05 1555

الموضوع : إعتراض عن الحجز

السيد : القاضي المدني في المحكمة الأمريكية    المحترم

أتمنى أولاً أن تكونوا بصحة جيدة وعافية وأحيكم تحية طيبة و بعد :
أنا السيد إبراهيم عثمان إبراهيم إدريس من مدينة بور السودان من دولة السودان
أبلغ من العمر أربعين سنة كنت مدرساً للقرآن الكريم في السودان وقد ذهبت إلى باكستان
من أجل الدعوة و التبليغ وفي سنة 2001 أواضره أو بداية 2002 تم القبض علي من طرف
الشرطة الباكستانية و سلمت إلى الأمريكان وتم نقلي إلى كوبا وأنا الآن في قوانتانامو
منذ يناير 2002 تقريباً وإلى يومنا الحالي أما أكثر من ثلاثة سنوات و قد قررت اللجنة
مراجعة و وضع المقاتل " CSRT " أنني عدو مقاتل، مع العلم أنني إنسان ليس لي أي علاقة
من قريب أو من بعيد بما حدث في أمريكا أو أني علاقة بالطالبان أو القاعدة وبعد ما قررت
اللجنة أني عدو مقاتل وسيتم تقديمي إلى اللجنة الثانية لتنظر هذا الشكل مهترئ أمريكا
أما لا، فإن قررت هذه اللجنة الثانية أني لا أشكله خطر فيمكنك أن يطلق سراحي وإن كنت أشكل
خطر فسيبقوا جزءً في قوانتانامو.

فإنني سيدي أنا أطلب من سعادتكم النظر في قضيتي وأنا أعترض عن قرار اللجنة بأني مقاتل عدو
كما أعترض عن حجزي ثلاث سنوات في هذا السجن بعيداً عن إخواني وأخواتي، مع العلم أني من عائلة
فقيرة جداً في السودان وأريد أن أخرج من هذا المكان للعودة إلى حياة الطبيعية مع عائلتي
والزواج لأني أعزب و مساعدة كل عائلتي ، كذلك أني لا أستطيع حتى تعيين محامي وهذا
للحالة المادية الضعيفة ولا أن آتهل بمائلتي وهنا بصعوبة إلى تهائية المنطقة التي آسكن فيها
وفي الأخير سيدي القاضي آمنى منكم أن تنظروا في قضيتي و تعاونوا أن تسعدوني
تقبلوا سعادتكم فائق التقدير و الإحترام.

توقيع المرسل

توقيع المعني (للسكن)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------------  x

IBRAHIM OSMAN IBRAHIM IDRIS,                   :
      Detainee,
      Guantanamo Bay Naval Station          :
      Guantanamo Bay, Cuba,
                            :

*Petitioner/Plaintiff,*                        :    MOTION FOR APPOINTMENT
                                    AS COUNSEL
v.                                             :
                                    No.  05-CV-1555 (JR)
GEORGE W. BUSH,                                :
      President of the United States
      The White House                       :
      1600 Pennsylvania Ave., N.W.
      Washington, D.C. 20500;               :

DONALD RUMSFELD,                               :
      Secretary, United States
      Department of Defense                 :
      1000 Defense Pentagon
      Washington, D.C. 20301-1000;          :

ARMY BRIG. GEN. JAY HOOD,                      :
      Commander, Joint Task Force - GTMO
      JTF-GTMO                              :
      APO AE 09360; and
                              :

ARMY COL. MIKE BUMGARNER,                      :
      Commander, Joint Detention
        Operations Group - JTF-GTMO,         :
      JTF-GTMO
      APO AE 09360,                         :

*Respondents/Defendants.*                      :

------------------------------------------------------------------------  x

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Abrahim Othman Abrahim Edries,          )
      Detainee,                          )
      Guantanamo Bay Naval Station       )
      Guantanamo Bay, Cuba;              )
                                         )
BISHER AL-RAWI,                         )
                                         )
      as Next Friend of                  )
      Abrahim Othman Abrahim Edries;     )
                                         )
*Petitioners/Plaintiffs,*               )
                                         )
                                         )          **PETITION FOR**
                                         )          **ISSUANCE OF A WRIT**
                                         )          **OF *HABEAS CORPUS***
                                         )
v.                                      )
                                         )          **CASE NUMBER  1:05CV01725**
                                         )
                                         )          JUDGE: Richard W. Roberts
GEORGE W. BUSH,                         )
      President of the United States      )          DECK TYPE: Habeas Corpus/2255
      The White House                    )
      1600 Pennsylvania Ave., N.W.       )          DATE STAMP: 08/30/2005
      Washington, D.C. 20500;            )
                                         )
DONALD RUMSFELD,                        )
      Secretary, United States           )
      Department of Defense              )
      1000 Defense Pentagon              )
      Washington, D.C. 20301-1000;       )
                                         )
ARMY BRIG. GEN. JAY HOOD,               )
      Commander, Joint Task Force – GTMO )
      JTF-GTMO                           )
      APO AE 09360; and                  )
                                         )
ARMY COL. MIKE BUMGARNER,               )
      Commander, Joint Detention         )
        Operations Group - JTF-GTMO,    )
      JTF-GTMO                           )
      APO AE 09360,                      )
                                         )
*Respondents/Defendants.*               )

1

### PETITION FOR ISSUANCE OF A WRIT OF *HABEAS CORPUS*

This Petition for Issuance of a Writ of *Habeas Corpus* is respectfully submitted on behalf of Petitioner Abrahim Othman Abrahim Edries ("Petitioner Edries"). A citizen of the Sudan, Petitioner Edries acts on his own behalf and through his fellow Petitioner and Next Friend Bisher Al-Rawi ("Next Friend Al-Rawi"). Petitioner Edries, along with his Next Friend Al-Rawi, is under detention at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioner Edries is a civilian who wrongly has been classified an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention.

Petitioner Edries is being held under color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Petitioner Edries has authorized his Next Friend Al-Rawi to retain counsel for him and file this Petition on his behalf. Accordingly, Next Friend Al-Rawi respectfully petitions this Court on behalf of Petitioner Edries to issue a Writ of *Habeas Corpus* compelling Respondents either to release Petitioner Edries or to establish in this Court a lawful basis for Petitioner Edries' initial and continued detention. Next Friend Al-Rawi also respectfully petitions this Court for order injunctive and declaratory relief on behalf of Petitioner Edries.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the Executive Order of November 13, 2001,

Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Petitioner Edries at Guantánamo.

## I.
## JURISDICTION

1.      Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.      This Court is empowered under 28 U.S.C. § 2241 to issue the requested Writ of *Habeas Corpus*, and to entertain the Petition filed by Next Friend Al-Rawi under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

3

## II.
## PARTIES

3.      Petitioner Edries is a Sudanese citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control.  *See* Declaration of George Brent Mickum IV ("Mickum Decl.") at ¶¶ 2, 6, filed concurrently herewith and in support hereof, attached as Exhibit A.

4.      Next Friend Al-Rawi is Petitioner Edries's fellow detainee at Guantánamo.  *Id.* at ¶ 3.  Because Petitioner Edries has been denied access to legal counsel and to the courts of the United States, Mr. Al-Rawi is acting as Petitioner Edries's Next Friend and, in that capacity, has been authorized to file this petition in Petitioner Edries's behalf.  [Next Friend Al-Rawi has separately commenced a similar proceeding seeking the issuance of a Writ of *Habeas Corpus*, No. 04-cv-01144.]

5.      Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States.  Petitioner Edries is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("the Executive Order").  President Bush is responsible for Petitioner Edries's initial and continued unlawful detention and is sued in his official capacity.

6.      Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense.  Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order,

Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Edries. He is sued in his official capacity.

7.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force charged with operating the detention facilities at Guantánamo Bay. He has supervisory responsibility for Petitioner Edries and is sued in his official capacity.

8.    Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Edries is presently held. He is the immediate custodian responsible for Petitioner Edries's detention and is sued in his official capacity.

9.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

## III.
## STATEMENT OF FACTS

10.    Upon information and belief, Petitioner Edries is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States government in any civil or military proceeding.

5

11.    Upon information and belief, Petitioner Edries is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

12.    Petitioner Edries seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' classification of him as an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive Branch of the United States government in the Combatant Status Review Tribunals.

13.    Upon information and belief, at the time of his seizure and detention, Petitioner Edries was not a member of the Taliban Government's armed forces or Al Qaeda, nor did he cause or attempt to cause any harm to American personnel or property prior to his detention.

14.    Petitioner Edries remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

15.    Petitioner Edries has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

6

16.    Upon information and belief, Petitioner Edries desires to pursue in the courts of the United States every available legal challenge to the lawfulness of his detention.

### The Authorization for Use of Military Force by Congress

17.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, the then ruling power in Afghanistan (the "Armed Conflict").

18.    On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Sept. 18, 2001) (the "AUMF").

19.    Upon information and belief, Petitioner Edries did not participate in an armed conflict against the United States at any point in time; therefore, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the AUMF.

20.    Upon information and belief, Petitioner Edries is not, and has never been, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit any violent act against any American person or property or espouse any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of

7

international terrorism attributed by the United States to Al Qaeda or any other terrorist

group. He is not properly subject to the Executive Order issued by President Bush.

### The Executive Order

21.    On November 13, 2001, Respondent Bush issued an Executive Order

authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has

"reason to believe":

> i.    is or was a member of the organization known as Al
> Qaeda;
> ii.    has engaged in, aided or abetted, or conspired to
> commit, acts of international terrorism, or acts in
> preparation therefor, that have caused, threaten to cause, or
> have as their aim to cause, injury to or adverse effects on
> the United States, its citizens, national security, foreign
> policy, or economy; or
> iii.    has knowingly harbored one or more individuals
> described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (Nov. 13, 2001) (the "Executive Order").

President Bush must make the determination in writing contemplated by the Executive

Order. The Executive Order was neither authorized nor directed by Congress, and is

beyond the scope of the AUMF.

22.    The Executive Order purports to vest President Bush with the sole

discretion to identify individuals who fall within its purview. It establishes no standards

governing the exercise of his discretion. Once a person has been detained, the Executive

Order contains no provision for that person to be notified of the charges he may face or of

the evidence, if any, upon which such charges purport to be based. The Executive Order

authorizes detainees to be confined indefinitely without charges. It contains no provision

for a detainee to be notified of his rights under domestic or international law and provides

8

neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than Respondent Bush's written determination that an individual is subject to its terms.

23.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Edries was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Edries at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Edries, was, and is, being made by Respondents in the United States and in this judicial district.

24.    Respondent Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Edries is subject to the Executive Order.

25.    Petitioner Edries is not properly subject to the Executive Order.

26.    Upon information and belief, Petitioner Edries was not arrested or detained by the United States in the course of his participation in an armed conflict against the United States.

27.    Petitioner Edries has not been, and is not being, detained lawfully either pursuant to the Executive Order, Respondent Bush's authority as Commander-in-Chief and/or under the laws and usages of war.

**Guantánamo Bay Naval Station**

28.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to prison facilities at Guantánamo. Currently, prisoners are housed in a maximum-security interrogation and detention center at Guantánamo.

29.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

30.    Upon information and belief, by at least January 1, 2005, the United States military transferred Petitioner Edries to Guantánamo, where he has been held in the custody and control of Respondents ever since.

**The Conditions of Detention at Guantanamo**

31.    Since gaining control of Petitioner Edries, the United States military has held him virtually *incommunicado*.

32.    Upon information and belief, and based on the experiences of other detainees, it is likely that Petitioner Edries has been, or will be, forced to provide involuntary statements to Respondents' agents at Guantánamo and interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.

33.    Petitioner Edries has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States

10

Constitution, the regulations of the United States Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1951 Convention Relating to the Status of Refugees or customary international law. Indeed, Respondents have taken the position that Petitioner Edries should not be informed of these rights. As a result, Petitioner Edries lacks any ability to protect or to vindicate his rights under domestic and international law.

34.    Upon information and belief, Petitioner Edries has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,* Press Release, United Nations, *United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees* (Feb. 4, 2005); Press Release, International Committee of the Red Cross, *The ICRC's Work at Guantánamo Bay* (Nov. 30, 2004); Operational Update, International Committee of the Red Cross, *US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC* (Jul. 26, 2004); Amnesty International, *United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror'* (2004) (available at http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck, *Abuse of Detainees at Guantanamo Bay*, The Nat'l Assoc. of Criminal Defense Lawyers Champion, Nov. 2004, at 4-5.

35.    In a confidential report to the United States government, the International Committee of the Red Cross ("the ICRC") charged the U.S. military with intentional use of psychological and physical coercion on prisoners during interrogations at Guantánamo

11

that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in

Guantánamo," N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors

and other medical workers at Guantánamo participated in planning for interrogations.

*Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, *When Doctors Go to War*, New

England Journal of Medicine, Jan. 6, 2005, at 3-4. Since details of the ICRC's report

emerged, new revelations of abuse and torture at Guantánamo have appeared, including

FBI memos detailing torture and "highly aggressive interrogation techniques" that

include 24-plus hour interrogations involving temperature extremes, dogs, prolonged

isolation, and loud music. *See* Amnesty International, *Guantánamo: An Icon of

Lawlessness*, 3-5 (Jan. 2005); *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh

Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further

Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26,

2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Files Describe Abuses of

Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI

Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1;

Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7,

2004, at A19. Even more recently, the Associated Press has reported allegations that

female Guantánamo interrogators have used sexual taunting, including smearing fake

menstrual blood on a detainee's face, to try to break Muslim detainees. *Gitmo Soldier

Details Sexual Tactics*, Associated Press, Jan. 27, 2005.

      36.     The unlawful and unconstitutional interrogation techniques used by

Respondents at Guantánamo include not only physical and psychological abuse but also

other impermissible conduct contrary to due process requirements, including, upon information and belief, having agents of the Government present themselves as lawyers for the detainees during meetings with the detainees, for the purpose of extracting information from the detainees. *See* Sam Hananel, *Lawyers Describe Guantánamo Detainees as Emaciated, Abused*, Associated Press, Jan. 19, 2005.

37.    Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002), *available at* http://slate.msn.com/features/whatistorture/pdfs/020109.pdf; Department of Defense, *Working Group Report on Detainee Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at 62-65 (Apr. 4, 2003), *available at* http://www.defenselink.mil/news/Jun2004/d20040622doc8.pdf.[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at Guantanamo are set out at length in a statement by numerous released British detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, *Composite Statement: Detention in Afghanistan and Guantanamo Bay* 300, *at* http://www.ccr-ny.org/v2/reports/docs/Gitmo compositestatementFINAL23july04.pdf). The Department of Defense also informed the Associated Press that a number of interrogators at Guantanamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*, Associated Press, Nov. 4, 2004.

38.    Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, *Gonzales Says '02 Humane-Policy Order on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

39.    Upon information and belief, Petitioner Edries is at risk of being subject to the above coercive and unlawful interrogation techniques, violating his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

40.    In published statements, Respondent Bush and Respondent Rumsfeld, and predecessors of Respondents Hood and Bumgarner, including Marine Brig. Gen. Mike Lehnert, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.*, Roland Watson, *British Team to Question Cuba Detainees*, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Detainee Camp Getting More Scrutiny*, Associated Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert

14

said plans are to build a more permanent prison 'exactly in accordance with federal

prison standards . . . ."); John Mintz, *Extended Detention in Cuba Mulled,* Wash. Post,

Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for

conducting military trials of foreign detainees, U.S. officials say they envision the naval

base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony

for many years to come.").

     41.    According to the Department of Defense, even detainees who are

adjudged innocent of all charges by a military commission may nevertheless be kept in

detention at Guantánamo indefinitely.  *See* Press Background Briefing, Department of

Defense (Jul. 3, 2003), *at* http://www.defenselink.mil/transcripts/2003/tr20030703-

0323.html (last visited Feb. 14, 2005).

     42.    Counsel for Respondents have also consistently maintained that the United

States has reserved the right to hold the detainees under their current conditions

indefinitely.  Transcript of Oral Argument on Motion to Dismiss at 22-24, *In re*

*Guantánamo Detainee Cases*, No. 02-CV-0299 (D.D.C. Dec. 1, 2004) (statements of

Principle Deputy Associate Attorney General Brian Boyle); *see also* Dana Priest, *Long-*

*Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1.  Moreover, the

Government has recently acknowledged plans to begin constructing another permanent

facility at Guantánamo.  Christopher Cooper, *In Guantánamo, Prisoners Languish in a*

*Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of*

*Permanency*, Associated Press, Jan. 9, 2005.

**Rendition**

15

43.    Upon information and belief, during interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. The United States has secretly transferred detainees to such countries for detention in those countries without complying with the applicable legal requirements for extradition.

44.    This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture while in detention in other countries. *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.

45.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, among others, the *Washington Post, The Los Angeles Times*, and the British Broadcasting Corporation (the "BBC"). According to news accounts,

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics -- including torture and threats to families -- that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *"U.S. Behind Secret Transfer of Terror Suspects,"* Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *"Long Term Plan Sought for Terror Suspects,"* Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt ...,

16

that agree to have local security services hold certain suspects in their facilities for interrogation by CIA and foreign liaison officers.").

46.    Upon information and belief, Petitioner Edries is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture during interrogations and incarceration.

47.    Upon information and belief, Petitioner Edries has a legitimate fear of imminent harm if rendered to any other country, including his home country of Sudan, due to the heightened risk of incarceration, torture, and persecution.

48.    The rendering of Petitioner Edries to Sudan or to another country for interrogation and torture would violate the Convention Against Torture and other Cruel and Degrading Treatment and Punishment, the international Covenant on Civil and Political Rights, and the Third and Fourth Geneva Conventions.  This Court has jurisdiction to address the potential rendition of Petitioners Edries pursuant to 28 U.S.C. §§2241(c)(1) and 1350.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

49.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

50.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the

17

Due Process Clause of the Fifth Amendment to the Constitution of the United States. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Edries the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the United States Constitution, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

51.    To the extent that Petitioner Edries's detention purports to be authorized by the Executive Order (despite the fact that the Order has not been authorized by Congress), the Executive Order violates the Fifth Amendment on its face and as applied to Petitioner.

52.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION
OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

53.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Edries to be free from

18

unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth

Amendment to the Constitution of the United States.

55.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory and

injunctive relief, as well as any other relief the Court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

56.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

57.    By the actions described above, Respondents, acting under color of law,

have denied and continue to deny Petitioner Edries the process accorded to persons

seized and detained by the United States military in times of armed conflict as established

by the Third and Fourth Geneva Conventions.

58.    Violations of the Geneva Conventions are direct treaty violations, are

violations of customary international law, and constitute an enforceable claim under 28

U.S.C. § 2241 (c)(3).

59.    Respondents are liable for the conduct described above, insofar as they set

the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed,

ratified, and/or conspired to violate the Geneva Conventions.

60.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and

injunctive relief, as well as any other relief the Court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
### ARBITRARY DENIAL OF DUE PROCESS)

19

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents have denied and continue to deny Petitioner Edries the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by customary international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

63.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FIFTH CLAIM FOR RELIEF<br>(ALIEN TORT STATUTE - TORTURE)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    By the actions described above, the Respondents, upon information and belief, directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Edries in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Edries or for other purposes.

66.    Upon information and belief, abuses included holding Petitioner Edries in conditions of isolation; making him constantly vulnerable to repeated interrogation and severe beatings; keeping him in cages with no privacy; shackling him with heavy chains and irons; placing him in solitary confinement for minor rule infractions for prolonged

periods of time; interrogating him while shackled and chained in painful positions; exposing him to extreme temperatures; subjecting him to violence or to the threat of violence; threatening him with rendition to countries that practice torture; sexually humiliating him; denying him access to counsel and family; depriving him of adequate medical care; and subjecting him to repeated psychological abuse.

67.     The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

68.     Respondents are liable for such conduct to the extent they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit such acts of torture against Petitioner Edries.

69.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### SIXTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

70.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.     Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Edries, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

72.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.     Respondents are liable for such conduct to the extent that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Edries.

74.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

<u>SEVENTH CLAIM FOR RELIEF</u>
<u>(ALIEN TORT STATUTE -</u>
<u>ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)</u>

75.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.     The acts described herein constitute arbitrary arrest and detention of Petitioner Edries in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

22

77.    Respondents are liable for such conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Edries in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

65.    As a result of Respondents' unlawful conduct, Petitioner Edries has been and continues to be deprived of his freedom, separated from his family, and upon information and belief, forced to suffer severe physical and mental abuse.

66.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

78.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Edries in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

23

80.    As a result of Respondents' unlawful conduct, Petitioner Edries has been and continues to be deprived of his freedom, separated from his family and, upon information and belief, forced to suffer severe physical and mental abuse.

81.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

**NINTH CLAIM FOR RELIEF**
**(ARTICLE II OF THE UNITED STATES CONSTITUTION-**
**UNLAWFUL DETENTION)**

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.    Upon information and belief, Petitioner Edries is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.

67.    The Executive Branch lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2642 (2004).

68.    By the actions described above, Respondent Bush has exceeded and continues to exceed his authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Edries and transfer him to military detention, and by authorizing and ordering his continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Edries.

24

69.    The military seizure and detention of Petitioner Edries by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution. To the extent that Respondents assert that Petitioner's detention is authorized by the Executive Order, that Order exceeds Respondent Bush's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner Edries.

70.    To the extent that Respondents assert that their authority to detain Petitioner Edries derives from a source other than the Executive Order, including without limitation Respondent Bush's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack such authority as a matter of fact and law.

71.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADIMINSTRATIVE PROCEDURES ACT --
### ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

84.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

85.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without

25

further proceedings to determine what acts they have committed and what penalty should be imposed.").

86.     By arbitrarily and capriciously detaining Petitioner Edries in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

87.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

88.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Edries the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

90.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

TWELFTH CLAIM FOR RELIEF
(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

91.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, the Respondents, upon information or belief, have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Edries to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

93.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Edries's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Edries's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

96.     Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

### FOURTEENTH CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE - RENDITION)

97.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.    Upon information and belief, Petitioner Edries is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

99.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

100.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (1984), and the 1951 Convention and 1967 Protocol Relating to the Status of Refugees, 19 U.S.T. 6259.

102.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

103.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered,

expelled or returned without lawful procedures to a country that engages in torture.  The

transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will

be subjected to torture constitutes a violation of Petitioner's rights under customary

international law, which may be vindicated under the Alien Tort Statute.

105.    Accordingly, Petitioner Edries is entitled to *habeas*, declaratory, and

injunctive relief, as well as any other relief the Court may deem appropriate.

**V.**
**PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully request that the Court grant the following

relief:

1.    Designating Bisher Al-Rawi as Next Friend of Abrahim Othman

Abrahim Edries;

2.    Issuing the Writ of *Habeas Corpus* and ordering Respondents to

release Petitioner Edries from his current unlawful detention;

3.    Ordering that Petitioner Edries be brought before the Court or

before a Magistrate Judge assigned by the Court to conduct proceedings under the

supervision of the Court to vindicate his rights;

4.    Ordering that Petitioner Edries cannot be transferred to any other country without his specific written agreement or the written agreement of his counsel while this action is pending;

5.    Ordering that Petitioner Edries cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

6.    Ordering Respondents to allow counsel to meet and confer with Petitioner Edries, in private and unmonitored attorney-client conversations;

7.    Ordering Respondents to cease all interrogations of Petitioner Edries while this litigation is pending;

8.    Ordering Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Edries;

9.    Ordering and declaring the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and/or customary international law;

10.    Ordering and declaring that the prolonged, indefinite, and restrictive detention of Petitioner Edries without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the

30

treaties of the United States, and/or customary international humanitarian law; and

      11.    Granting such other and further relief as the Court may deem just or appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and/or international law.

Dated:        August 29, 2005                    Respectfully submitted,

Counsel for Petitioners:

John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar. No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel: (202) 383 8000
Fax: (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Cameron L. Schroeder
Hadassa Waxman
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 909-6000
Fax: (212) 909-6386


*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

**CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION**

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing Petitioner without compensation.

Dated:        August 29, 2005

_____
John B. Missing (Bar No. 425469)
Jennifer C. Argabright (Bar. No. 480763)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118


Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Cameron L. Schroeder
Hadassa Waxman
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386


*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

33